# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**Estate of Bettye Scarberry Ferguson, Deceased,**
**by and through Jerry Ferguson, Administrator**
**of Estate of Bettye Scarberry Ferguson,**
**Deceased, for the use and benefit of the Estate**
**of Bettye Scarberry Ferguson, Deceased, and**
**for the use and benefit of the wrongful death**
**beneficiaries of Bettye Scarberry Ferguson,**

**PLAINTIFF**

**vs.**                                          Case No.   3:17cv025-NBB-JMV

**GGNSC Southaven LLC d/b/a Golden**
**LivingCenter-Southaven; GGNSC**
**Administrative Services LLC d/b/a Golden**
**Ventures; GGNSC Clinical Services LLC d/b/a**
**Golden Clinical Services; GGNSC Holdings LLC**
**d/b/a Golden Horizons; Golden Gate National**
**Senior Care LLC d/b/a Golden Living; GGNSC**
**Equity Holdings LLC; and Golden Gate**
**Ancillary LLC d/b/a Golden Innovations,**

**DEFENDANTS**

## COMPLAINT

COMES NOW the Plaintiff, Jerry Ferguson, Administrator of Estate of Bettye Scarberry

Ferguson, Deceased, for the use and benefit of Estate of Bettye Scarberry Ferguson, Deceased,

and for the use and benefit of the wrongful death beneficiaries of Bettye Scarberry Ferguson, and

by and through the undersigned counsel, Jehl Law Group, PLLC, and for the cause of action

against Defendants, states and alleges:

## JURISDICTIONAL STATEMENT

1.      Jerry Ferguson is the son of Bettye Scarberry Ferguson, and brings this action as Administrator of Estate of Bettye Scarberry Ferguson, Deceased, and for the use and benefit of Estate of Bettye Scarberry Ferguson, Deceased, and for the use and benefit of the wrongful death beneficiaries of Bettye Scarberry Ferguson, and pursuant to Mississippi law.  A copy of the Letters of Administration appointing Jerry Ferguson as Administrator of Estate of Bettye Scarberry Ferguson, Deceased, as issued in the DeSoto County, Mississippi Chancery Court under Case No. 16-CV-2002 is attached hereto as Exhibit A.

2.      Bettye Scarberry Ferguson was, at all times material hereto, a resident of Golden LivingCenter-Southaven, a skilled nursing facility located at 1730 Dorchester Drive, Southaven, Mississippi 38671.

3.      Separate Defendant GGNSC Southaven LLC is a foreign limited liability company with its principal place of business at 1730 Dorchester Drive, Southaven, Mississippi 38671.  At all times material to this lawsuit, Defendant GGNSC Southaven LLC has done business in Mississippi and continues to do business in Mississippi.  GGNSC Southaven LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven.  Separate Defendant GGNSC Southaven LLC may be served with process through its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

4.      Separate Defendant GGNSC Administrative Services LLC is a foreign limited liability company with a principal place of business at 7160 North Dallas Parkway Suite 400, Plano, Texas 75024.  At all times material to this lawsuit, Defendant GGNSC Administrative

Services LLC has done business in Mississippi and continues to do business in Mississippi. GGNSC Administrative Services LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven. Separate Defendant GGNSC Administrative Services LLC may be served with process through its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

5.      Separate Defendant GGNSC Clinical Services LLC is a foreign limited liability company with its principal place of business at 7160 North Dallas Parkway Suite 400, Plano, Texas 75024. At all times material to this lawsuit, Defendant GGNSC Clinical Services LLC has done business in Mississippi and continues to do business in Mississippi. GGNSC Clinical Services LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven. Separate Defendant GGNSC Clinical Services LLC may be served with process through its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

6.      Separate Defendant GGNSC Holdings LLC is a foreign limited liability corporation with its principal place of business at 7160 North Dallas Parkway, Suite 400, Plano, Texas 75024. Upon information and belief, at times material to this action, GGNSC Holdings LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven. Separate Defendant GGNSC Holdings LLC may be served with process through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7. Separate Defendant Golden Gate National Senior Care LLC is a foreign limited liability company with its principal place of business at 7160 North Dallas Parkway Suite 400, Plano, Texas 75024. Upon information and belief, at times material to this action, Golden Gate National Senior Care LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven. Separate Defendant GGNSC Golden Gate National Senior Care LLC may be served with process through its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

8. Separate Defendant GGNSC Equity Holdings LLC is a foreign limited liability company with its principal place of business at 7160 North Dallas Parkway, Suite 400, Plano, Texas 75024. Upon information and belief, at times material to this action, GGNSC Equity Holdings LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven. Separate Defendant GGNSC Equity Holdings LLC may be served with process through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9. Separate Defendant Golden Gate Ancillary LLC is a foreign limited liability company with its principal place of business at 7160 North Dallas Parkway, Suite 400, Plano, Texas 75024. Upon information and belief, at times material to this action, Golden Gate Ancillary LLC was, and remains, a company engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Golden LivingCenter-Southaven. Separate Defendant Golden Gate Ancillary LLC

4

can be served with process through its registered agent, Corporation Service Company, 5760 I-55 North, Jackson, Mississippi 39211.

10.     At all times material hereto, Defendants owned, operated, and/or controlled Golden LivingCenter-Southaven in Southaven, DeSoto County, Mississippi. The actions of each of Golden LivingCenter-Southaven's servants, agents, and employees as set forth herein, are imputed to GGNSC Southaven LLC d/b/a Golden LivingCenter-Southaven; GGNSC Administrative Services LLC d/b/a Golden Ventures; GGNSC Clinical Services LLC d/b/a Golden Clinical Services; GGNSC Holdings LLC d/b/a Golden Horizons; Golden Gate National Senior Care LLC d/b/a Golden Living; GGNSC Equity Holdings LLC; and Golden Gate Ancillary LLC d/b/a Golden Innovations.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and, upon information and belief, this action is between citizens of different states.

12.     Pursuant to 28 U.S.C. § 1391(a), venue is appropriate in this Court because of substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## FACTUAL SUMMARY

13.     On or about June 12, 2015, Bettye Scarberry Ferguson, at the age of 85 was admitted to Golden LivingCenter-Southaven and she remained a resident of the nursing home until on or about July 4, 2015, when she was transferred to Baptist Memorial Hospital-DeSoto. She remained at Baptist Memorial Hospital-DeSoto from on or about July 4, 2015, until on or

about July 11, 2015, when she was transferred to North Delta Hospice where she died on July 21, 2015.

14.    During her admittance to Defendants' facility, Bettye Scarberry Ferguson was no longer able to handle her own affairs and was dependent on Defendants to meet her needs.

15.    Defendants were well aware of Bettye Scarberry Ferguson's medical condition and the care that she required when they represented that they could adequately care for her needs.

16.    Defendants held themselves out as being:

    (a)    Skilled in the performance of nursing, rehabilitative, and other medical support services;

    (b)    Properly staffed, supervised, and equipped to meet the total needs of its nursing home residents;

    (c)    Able to specifically meet the total nursing home, medical, and physical therapy needs of Bettye Scarberry Ferguson and other residents like her; and,

    (d)    Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes.

17.    Defendants failed to discharge their obligations of care to Bettye Scarberry Ferguson.  As a consequence thereof, Bettye Scarberry Ferguson suffered catastrophic injuries, disfigurement, extreme pain, suffering, mental anguish, and death.  The scope and severity of the recurrent wrongs inflicted upon Bettye Scarberry Ferguson while under the care of the facility accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma which includes, but is not limited to:

    (a)    Fall with major head injury and multiple facial fractures;

    (b)    Poor hygiene;

6

(c)     Severe pain; and

(d)     Death.

18.     All of the above identified injuries, as well as the conduct specified below, caused Bettye Scarberry Ferguson to lose her personal dignity and caused her death to be preceded by extreme and unnecessary pain, degradation, anguish, otherwise unnecessary hospitalizations, disfigurement, and emotional trauma.

19.     The wrongs complained of herein were of a continuing nature, and occurred throughout Bettye Scarberry Ferguson's stay at Defendants' facility.

20.     Plaintiff alleges that on all of the occasions complained of herein, Bettye Scarberry Ferguson was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

21.     Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including its employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Bettye Scarberry Ferguson.

22.     Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST ALL DEFENDANTS

23.     The Plaintiff re-alleges and incorporates the allegations in paragraphs 1-22 as if set forth herein.

24.     Defendants owed a duty to residents, including Bettye Scarberry Ferguson, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

25.     Defendants' employees owed a duty to residents, including Bettye Scarberry Ferguson, to exercise reasonable care in providing care and services in a safe and beneficial manner.

26.     Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse, and neglect of Bettye Scarberry Ferguson.

27.     The negligence of the Defendants, their employees, agents, and consultants, includes, but is not limited to, one or more of the following acts and omissions:

(a)     The failure to provide Bettye Scarberry Ferguson with warm and palatable meals and adequate fluids;

(b)     The failure to provide Bettye Scarberry Ferguson with necessary and adequate continence care and assistance with toileting;

(c)     The failure to provide Bettye Scarberry Ferguson with adequate and appropriate hygiene care, including the failure to bathe her daily after each incontinent episode;

(d)     The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

(e)     The failure to protect Bettye Scarberry Ferguson from harm within the facility;

(f)     The failure to respond to significant signs and symptoms of change in the condition of Bettye Scarberry Ferguson;

(g)     The failure to ensure sufficient staff on hand to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Bettye Scarberry Ferguson;

(h)     The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in Bettye Scarberry Ferguson's condition;

(i)     The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of Bettye Scarberry Ferguson;

(j)     The failure to increase the number of personnel to ensure that Bettye Scarberry Ferguson:

      (1)     received timely and accurate care assessments;

      (2)     received prescribed treatment, medication, and diet;

      (3)     received necessary supervision; and

      (4)     received timely intervention due to a significant change in condition.

(k)     The failure to provide nursing personnel sufficient in number to ensure that Bettye Scarberry Ferguson attained and maintained her highest level of physical, mental, and psychosocial well-being;

(l)     The failure to provide adequate supervision to the nursing staff so as to ensure that Bettye Scarberry Ferguson received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Bettye Scarberry Ferguson;

(m)     The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that Bettye Scarberry Ferguson received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Division of Health Facilities Licensure and Certification;

(n)     The failure to provide a nursing staff that was properly staffed, qualified, and trained;

(o)     The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint

9

derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

(p)    The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

(q)    The failure to properly and timely notify Bettye Scarberry Ferguson's attending physician of significant changes in Bettye Scarberry Ferguson's physical condition due to inadequate staffing resulting in needless and unnecessary pain, agony, and suffering on the part of Bettye Scarberry Ferguson;

(r)    The failure to provide a safe environment;

(s)    The failure to maintain medical records on Bettye Scarberry Ferguson in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

    (1)    the diagnosis of Bettye Scarberry Ferguson;

    (2)    the treatment of Bettye Scarberry Ferguson; and

    (3)    the assessment and establishment of appropriate care plans of care and treatment; and

(t)    The failure to adequately and appropriately monitor Bettye Scarberry Ferguson and recognize significant changes in her health status.

28.    A reasonably careful nursing home, operating under similar circumstances, would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Bettye Scarberry Ferguson.

29.    As a direct and proximate result of the negligence of Defendants as set out above, Bettye Scarberry Ferguson suffered injuries, including fall with major head injury and multiple facial fractures; poor hygiene; severe pain; and injuries to her dignity, resulting in her death; and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required Bettye Scarberry Ferguson to incur significant hospital and medical expenses and resulted in death.

30.     WHEREFORE, based on such conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, disfigurement, and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff asserts are entitled by law.

### COUNT TWO: MEDICAL MALPRACTICE AGAINST ALL DEFENDANTS

31.     Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1-30 as is fully set forth herein.

32.     Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36(15) as evidenced by the attached Affidavit of Service with Certificate of Mailing (Exhibit B).

33.     Defendants owed a duty to residents, including Bettye Scarberry Ferguson, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

34.     Defendants' employees owed a duty to residents, including Bettye Scarberry Ferguson, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

35.     Defendants owed a duty to assist all residents, including Bettye Scarberry Ferguson, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

36.     Defendants failed to meet the standard of care and violated their duty of care to Bettye Scarberry Ferguson through mistreatment, abuse and neglect.   The negligence of

11

Defendants, their employees, and consultants, includes, but is not limited to, one or more of the following acts and omissions:

(a) The failure to properly notify a doctor upon significant changes in Bettye Scarberry Ferguson's condition;

(b) The failure to respond to significant signs and symptoms of change in the condition of Bettye Scarberry Ferguson;

(c) The failure to adequately and timely assess, monitor and/or treat the development and progression of infection in Bettye Scarberry Ferguson;

(d) The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Bettye Scarberry Ferguson;

(e) The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in Bettye Scarberry Ferguson's condition;

(f) The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of Bettye Scarberry Ferguson;

(g) The failure to increase the number of nursing personnel to ensure that Bettye Scarberry Ferguson:

(1) received timely and accurate care assessments;

(2) received prescribed treatment, medication, and diet;

(3) received necessary supervision; and

(4) received timely nursing and medical intervention due to a significant change in condition.

(h) The failure to provide nursing personnel sufficient in number to ensure that Bettye Scarberry Ferguson attained and maintained her highest level of physical, mental and psychosocial well-being;

(i) The failure to provide adequate supervision to the nursing staff so as to ensure that Bettye Scarberry Ferguson received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments, medications, and supervision to prevent Ms. Ferguson from suffering recurrent falls, and sufficient nursing observation and examination of the responses,

symptoms, and progress in the physical condition of Bettye Scarberry Ferguson;

(j)    The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Bettye Scarberry Ferguson received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

(k)    The failure to provide a nursing staff that was properly staffed, qualified, and trained;

(l)    The failure to provide and ensure an adequate nursing care plan based on the needs of Bettye Scarberry Ferguson;

(m)    The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Bettye Scarberry Ferguson changed;

(n)    The failure to implement and ensure that an adequate nursing care plan for Bettye Scarberry Ferguson was followed by nursing personnel;

(o)    The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

(p)    The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

(q)    The failure to provide Bettye Scarberry Ferguson with adequate and appropriate observation and examination so as to timely and adequately intervene to prevent the development, aggravation, and progression of infection;

(r)    The failure to provide care, treatment, and medication in accordance with physician's orders;

(s)    The failure to properly and timely notify Bettye Scarberry Ferguson's attending physician of significant changes in Bettye Scarberry Ferguson's physical condition, resulting in needless and unnecessary pain, agony, and suffering on the part of Bettye Scarberry Ferguson;

(t)    The failure to provide a safe environment;

(u) The failure to maintain medical records on Bettye Scarberry Ferguson in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

(1) the diagnosis of Bettye Scarberry Ferguson;

(2) the treatment of Bettye Scarberry Ferguson; and

(3) the assessment and establishment of appropriate care plans of care and treatment.

(v) The failure to adequately and appropriately monitor Bettye Scarberry Ferguson and recognize significant changes in her health status; and

(w) The failure to properly notify the family of Bettye Scarberry Ferguson of significant changes in her health status.

37. A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above complaint. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Bettye Scarberry Ferguson's injuries. Bettye Scarberry Ferguson's injuries were foreseeable to Defendants.

38. Defendants' conduct in breaching the duties owed to Bettye Scarberry Ferguson was negligent, grossly negligent, willful, wanton, malicious and reckless.

39. As a direct and proximate result of such negligent, grossly negligent, willful, wanton, reckless and malicious conduct, Bettye Scarberry Ferguson suffered injuries, including fall with major head injury and multiple facial fractures; poor hygiene; severe pain; and injuries to her dignity, resulting in her death; and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required Bettye Scarberry Ferguson to incur significant hospital and medical expenses and resulted in death.

40.    WHEREFORE, based on such conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, disfigurement, loss of enjoyment of life, humiliation, and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff asserts are entitled by law.

### COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF BETTYE SCARBERRY FERGUSON AGAINST ALL DEFENDANTS

41.    The Plaintiff re-alleges and incorporates the allegations in paragraphs 1-39 as if fully set forth herein.

42.    The longevity, scope and severity of Defendants' failures and actions as heretofore described constitute malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Bettye Scarberry Ferguson. Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as Bettye Scarberry Ferguson, entrusted to their care. Moreover, such conduct evidences such little regard for their duties of care, good faith, and fidelity owed to Bettye Scarberry Ferguson.

43.    The malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Bettye Scarberry Ferguson, and includes, but is not limited to, one or more of the following acts and omissions:

    (a)    The failure to provide Bettye Scarberry Ferguson with necessary and adequate continence care and assistance with toileting;

    (b)    The failure to provide Bettye Scarberry Ferguson with adequate and appropriate hygiene care, including the failure to bathe her daily after each

incontinent episode so as to prevent urine and fecal contact with her skin for an extended period of time;

(c)     The failure to provide clean bed linens to Bettye Scarberry Ferguson as needed to prevent urine and fecal contact for an extended period of time;

(d)     The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

(e)     The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Betty Scarberry Ferguson;

(f)     The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in Bettye Scarberry Ferguson's condition;

(g)     The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of Bettye Scarberry Ferguson;

(h)     The failure to increase the number of nursing personnel to ensure that Bettye Scarberry Ferguson:

   (1)     received timely and accurate care assessments;

   (2)     received prescribed treatment, medication, and diet;

   (3)     received necessary supervision; and

   (4)     received timely nursing and medical intervention due to a significant change in condition.

(i)     The failure to provide nursing personnel sufficient in number to ensure that Bettye Scarberry Ferguson attained and maintained her highest level of physical, mental and psychosocial well-being;

(j)     The failure to provide adequate supervision to the nursing staff so as to ensure that Bettye Scarberry Ferguson received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Bettye Scarberry Ferguson;

(k)     The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Bettye Scarberry Ferguson received appropriate

16

nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

(l)     The failure to provide a nursing staff that was properly staffed, qualified, and trained;

(m)     The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

(n)     The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

(o)     The failure to properly and timely notify Bettye Scarberry Ferguson's attending physician significant changes in Bettye Scarberry Ferguson's physical condition;

(p)     The failure to protect Bettye Scarberry Ferguson from harm within the facility;

(q)     The failure to respond to significant signs and symptoms of change in the condition of Bettye Scarberry Ferguson; and

(r)     The failure to properly notify a doctor upon significant changes in Bettye Scarberry Ferguson's condition.

44.     As a direct and proximate result of the above cited malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Bettye Scarberry Ferguson, she suffered fall with major head injury and multiple facial fractures; poor hygiene; severe pain; and injuries to her dignity, resulting in her death; and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required Bettye Scarberry Ferguson to incur significant hospital and medical expenses and resulted in death.

17

45.     WHEREFORE, based on such conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, fright and disfigurement in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff asserts are entitled by law.

## COUNT FOUR: FRAUD

46.     Plaintiff re-alleges and incorporates the allegations in paragraph 1-45 as if fully set forth herein.

47.     Defendants intentionally engaged in common law fraud which was a proximate cause of the injuries and damages described herein.  Defendants, while claiming or implying special knowledge, concealed and/or misrepresented material facts to Bettye Scarberry Ferguson and her family.  Defendants specifically misrepresented that they could and would provide twenty-four hour a day nursing care and supervision to Bettye Scarberry Ferguson, when, in fact, Defendants knew that they would not do so and they were not sufficiently staffed or supplied to do so.

48.     The relationship between Defendants and Bettye Scarberry Ferguson and her family was one of trust and confidence, and Defendants had a higher duty to affirmatively speak the truth to Bettye Scarberry Ferguson and her family because of Bettye Scarberry Ferguson's age and infirmities.  Defendants' fraudulent conduct includes, but is not limited to, the conduct described and set forth below.

49.     Defendants engaged in intentional fraud by concealing or failing to disclose material facts within Defendants' knowledge, when Defendants knew that Bettye Scarberry

18

Ferguson and her family were ignorant of these material facts and did not have an equal opportunity to discover the truth. Specifically, Defendants misrepresented the material fact that they were willing to, and would, provide the proper care, treatment, and services to Bettye Scarberry Ferguson, when in fact, Defendants knew that they would provide as little care, treatment, and services as possible in order to maximize Defendants' profits at the expense of Bettye Scarberry Ferguson.

50.    Further, Defendants intended to induce Bettye Scarberry Ferguson and her family to take some action: to wit, to not remove Bettye Scarberry Ferguson from Defendants' facility, by concealing or failing to disclose the material facts that there was an epidemic of resident harm and injury, as well as a practice of utilizing insufficient numbers of nursing aides who were not qualified to render care or services in accordance with the law. As a proximate cause of the concealment and failure to disclose by Defendants, Bettye Scarberry Ferguson and her family suffered injury.

51.    Defendants engaged in intentional fraud by making material misrepresentations with knowledge of their falsity and with the intention that such misrepresentations should be acted upon by Bettye Scarberry Ferguson and her family. As a consequence and as a proximate cause of the reliance on these misrepresentations, Bettye Scarberry Ferguson and her family suffered injury.

52.    Defendants entered into an agreement with, or on behalf of, Bettye Scarberry Ferguson and/or her family, wherein Defendants promised to provide basic care for Bettye Scarberry Ferguson. As partial consideration for this promise, Bettye Scarberry Ferguson and/or her family agreed to turn over virtually all of her income to these Defendants on a monthly basis. At the time of this agreement, it was known and understood by all parties that Defendants, for

good and sufficient consideration, had also entered into agreements with the State of Mississippi and other relevant licensing and regulatory authorities which were designed and intended to be for the benefit and protection of Bettye Scarberry Ferguson and others similarly situated. By virtue of these agreements and by direct statement, Defendants represented to Bettye Scarberry Ferguson and her family that the care they would provide for her would fully comply with the licensing requirements and standards of care specified by the laws and regulations of the State of Mississippi and other relevant licensing and regulatory authorities.

53. Defendants held themselves out to Plaintiffs and the public at large to be a nursing home licensed by the State of Mississippi and certified to provide care to nursing home residents. At all times material to this lawsuit, the aforesaid agreements, obligations and promises, which were a part thereof, were renewed on a monthly basis by virtue of payment made by, or on behalf of, Bettye Scarberry Ferguson, to Defendants for care to be rendered for the upcoming month. Defendants were paid each month in advance of care to be provided pursuant to the admission agreement and promises which were a part thereof, including but not limited to the resident's bill of rights.

54. Wherefore, based on such conduct of Defendants as set out above, Plaintiffs are entitled to and therefore assert a claim for punitive damages in an amount sufficient to punish and deter Defendants and others like them from such conduct in the future.

## COUNT FIVE: BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

55. Plaintiff re-alleges and incorporates the allegations in paragraph 1-54 as if fully set forth herein.

56. As a resident of the Defendants' facility, Bettye Scarberry Ferguson was particularly dependent for her daily care and well-being upon the Defendants, their employees

and agents. Because of the nature of this dependency and the representations of the Defendants that they could and would provide necessary care, Bettye Scarberry Ferguson and her family held in the Defendants a special confidence and trust which the Defendants accepted by admitting Bettye Scarberry Ferguson to their facility, and by determining the level of care to be provided to Bettye Scarberry Ferguson.

57. Bettye Scarberry Ferguson and her family relied upon the supposed superior knowledge, skill, and abilities of the Defendants, which the Defendants held themselves out to have. Bettye Scarberry Ferguson and her family also relied on the Defendants to provide care for Bettye Scarberry Ferguson who, because of her age and infirmities, was not able to care for herself.

58. By virtue of the nature of the services rendered to Bettye Scarberry Ferguson by Defendants, and the special relationship which developed between the Defendants and Bettye Scarberry Ferguson, as well as the huge disparity of power and unequal bargaining position existing between the Defendants and Bettye Scarberry Ferguson, the Defendants occupied a position of confidence toward Bettye Scarberry Ferguson which required fidelity, loyalty, good faith, and fair dealing by the Defendants.

59. The Defendants breached their fiduciary duty and duty of good faith and fair dealing to Bettye Scarberry Ferguson by failing to provide the appropriate level of care and services to which Bettye Scarberry Ferguson was entitled, by accepting payment for services and care not provided to Bettye Scarberry Ferguson, and by their concealment of and failure to disclose Defendants' abuse and neglect of Bettye Scarberry Ferguson.

60. As a proximate cause of the foregoing breaches of duty by the Defendants, Bettye Scarberry Ferguson suffered injuries as set forth above.

61.     Wherefore, based on such conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, fright and disfigurement in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Plaintiff also seeks the imposition of a constructive trust on all wrongful profits and proceeds arising out of Defendants' breach of fiduciary duty to Bettye Scarberry Ferguson.

### COUNT SIX: STATUTORY SURVIVAL CLAIM

62.     Plaintiff re-alleges and incorporates the allegations in paragraph 1-61 as if fully set forth herein.

63.     As a direct and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Bettye Scarberry Ferguson, Bettye Scarberry Ferguson suffered injuries, including fall with major head injury and multiple facial fractures; poor hygiene; severe pain; and injuries to her dignity, resulting in her death; and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required Bettye Scarberry Ferguson to incur significant hospital and medical expenses and resulted in death.

64.     As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Bettye Scarberry Ferguson died on July 21, 2015, thereby incurring funeral, burial, and other related expenses.

65.     WHEREFORE, based on such conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages for Bettye Scarberry Ferguson's death arising out of said conduct including, but not limited to hospital, medical, funeral, burial, costs of administration of Bettye Scarberry Ferguson's estate, and other related expenses incurred by or for Bettye Scarberry Ferguson as a result of the wrongful acts and omissions of Defendants, heretofore described, all in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff asserts are entitled by law.

## COUNT SEVEN: STATUTORY WRONGFUL DEATH CLAIM

66.     Plaintiff re-alleges and incorporates the allegations in paragraph 1-65 as if fully set forth herein.

67.     As a direct and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Bettye Scarberry Ferguson, Bettye Scarberry Ferguson suffered fall with major head injury and multiple facial fractures; poor hygiene; severe pain; and injuries to her dignity, resulting in her death; and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required Bettye Scarberry Ferguson to incur significant hospital and medical expenses and resulted in death.

68.     As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Bettye Scarberry Ferguson died on July 21, 2015, thereby incurring funeral, burial and other related expenses.

23

69.     As a result of the death of Bettye Scarberry Ferguson, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

70.     WHEREFORE, based on such conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including but not limited to Bettye Scarberry Ferguson's physical pain, suffering, mental anguish, disfigurement, loss of enjoyment of life, humiliation, and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff asserts are entitled by law.    Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with Bettye Scarberry Ferguson, including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection, training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff asserts are entitled by law.

## **PRAYER FOR RELIEF**

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff asserts demand that all issues of fact in this case be tried to a jury.

WHEREFORE, the Plaintiff, Jerry Ferguson, Administrator of Estate of Bettye Scarberry Ferguson, Deceased, and for the use and benefit of the wrongful death beneficiaries of Bettye Scarberry Ferguson, prays for judgment against Defendants, as follows:

1.    For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damage sustained;

2.    For all general and special damages caused by the alleged conduct of Defendants;

3.    For the costs of litigating this case;

4.    For punitive damages sufficient to punish Defendants for their egregious conduct and to deter Defendants from every repeating such atrocities; and

5.    For all other relief to which Plaintiff asserts are entitled by Mississippi law.

Respectfully submitted,

**JEHL LAW GROUP, PLLC**

By:

_/s/ Cameron C. Jehl_
Cameron C. Jehl (MS 100504)
5400 Poplar Avenue, Suite 250
Memphis, Tennessee 38119
Telephone Number:    901-322-4232
Facsimile Number:    901-322-4231

Attorney for Plaintiff